UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.: 7:10-cr-00429-GRA-1 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Difankh Asar, | ) | |
| a/k/a "James Walter Gist" | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant moves to suppress all statements made to law enforcement officers following his detainment on February 12, 2010. After considering the motions filed by the Parties, and the evidence offered at a hearing before this Court on July 20, 2010, Defendant's Motion to Suppress is DENIED.

## Background

Defendant is charged with felon in possession of a firearm. The statements at issue in this case stem from two separate encounters with law enforcement officials. The first encounter occurred at approximately 12:50 a.m. on February 12, 2010. South Carolina Highway Patrolman Brian Allison made a traffic stop in Union County, South Carolina, after he observed a vehicle drifting out of its lane.

When the officer approached the vehicle, he smelled a strong alcohol odor and noticed that Defendant, who was a passenger in the back seat, looked nervous. The officer questioned the driver, who admitted there was an open container of beer in

the back seat area. After calling for backup, the officer had the driver and a front seat passenger exit the vehicle. For his safety, he patted them both down for weapons. The officer then had Defendant exit the back seat, and upon patting him down for weapons found a bag of white powder. Although the powder later tested negative for drugs, the officer placed Defendant in handcuffs until he could determine the nature of the white powder. The officer did not read Defendant his *Miranda* rights.

The officer then began searching the back seat for the open container of beer and noticed what appeared to be the butt of a weapon between the back seat and the passenger-side body of the car. The officer removed a .22 caliber revolver. The officer was unfamiliar with this type of revolver because it had two barrels. The officer placed the revolver on the trunk of the stopped car in order to examine it. At that point, the officer testified that Defendant claimed ownership of the pistol. As Trooper Allison and another officer were attempting to figure out how to break down the revolver, Defendant kept insisting there was a lever that would break down the pistol. Eventually, Trooper Allison asked Defendant about the lever's location. Upon breaking down the revolver the officers discovered the pistol was loaded.

In his Motion to Suppress, Defendant argues that Trooper Allison initially questioned him about the weapon. At the hearing, Defendant's attorney pointed to a sentence from the police report where Trooper Allison wrote that he asked

Defendant about the pistol and that Defendant stated the pistol was his. Trooper Allison explained that the sentence in the report was his effort to summarize the stop. He testified that he only questioned Defendant about the lever's location, which occurred after Defendant had voluntarily admitted possession and expressed familiarity with the weapon's operation.

The second statement at issue occurred on April 19, 2010, while Defendant was being transported from state custody to the federal courthouse in Greenville for arraignment. Agent Dave Sanford, with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that he transported Defendant but knew nothing about the case. Agent Sanford testified that he did not *Mirandize* Defendant, but did tell Defendant why he was taking him to Greenville, and mentioned to Defendant that it could be beneficial for Defendant to cooperate by talking to his attorney about what happened. Defendant then explained that he was in possession of a pistol he had taken from his cousin a few hours before his arrest.

### Discussion

*Miranda* warnings are required only when the suspect is subject to "police interrogation while in custody." *Miranda v. Arizona*, 384 U.S. 436, 477 (1966). However, "'[i]nterrogation,'" as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Moreover, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions,

the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 301-302.

As to the statements made by Defendant to Trooper Allison, the Government has presented sufficient evidence to demonstrate that the contested statements were unsolicited by the officer.[1] Furthermore, Defendant has offered insufficient evidence to rebut the Government's showing, pointing only to a mere sentence in a police report. To be sure, the sentence in Trooper Allison's police report regarding Defendant claiming ownership could have been better phrased. However, Trooper Allison's testimony supports the Government's version of events. Accordingly, because unsolicited voluntarily asserted facts do not constitute interrogation, they are admissible. *See U.S. v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985).

The statement made by Defendant to Agent Sanford is also admissible. Defendant was not exposed to direct questioning by Agent Sanford regarding the weapon. The agent invited no response from Defendant and merely explained why Defendant was being transferred and what he might do to help himself *when he met with his attorney*. *See Innis*, 446 U.S. at 302. "The remark apparently 'struck a responsive chord' with [Defendant], but that is not enough to justify a finding that

---

[1] Only the comment about the location of the revolver's release lever was an answer to a direct question. This statement plainly falls within the public safety exception to *Miranda*. *See New York v. Quarles*, 467 U.S. 649, 657 (1984). Defendant had repeatedly mentioned the lever, and the officer was merely trying to make an unfamiliar weapon safe.

it constituted interrogation." *Vann v. Small*, 187 F.3d 650, 650 (9th Cir. 1999). "It cannot be said, in short, that [the agent] should have known that [his comment] was reasonably likely to elicit an incriminating response from the respondent." *Innis*, 446 U.S. at 302.[2]

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

July  21 , 2010
Anderson, South Carolina

---

[2] Assuming, *arguendo*, that Defendant's statement to Agent Sanford was obtained in violation of his *Miranda* rights, the gravamen of the statement was identical to the properly obtained admission by Trooper Allison. *See, e.g.*, *Bryant v. Vose*, 785 F.2d 364, 922-23 (1st Cir.1986) (holding that admission of statement in violation of *Miranda* was harmless error because it was cumulative of properly-admitted statement); *United States v. Packer*, 730 F.2d 1151, 1157 (8th Cir.1984) (holding that admission of statements obtained in violation of *Miranda* was harmless error given overwhelming evidence of guilt, including constitutionally-obtained statements and physical evidence).